and then take a short recess before hearing the final two cases. We begin with Johnson v. Thibodaux City. Mr. Taylor. May it please the Court, my name is Nelson Dan Taylor Sr. and I represent Ms. Jacqueline Rosa Johnson and DeJuan Rene Everett. I submit that there aren't really any facts in dispute between the parties, and if we read the briefs, we will discover that both the plaintiffs and the defendants pretty much are in agreement about the essential facts in this case. On the evening of October the 13th, 2015, four young men and women were sitting on the porch of a house and one of the mothers asked their daughter to go to the store, which is right around the corner for an errand, and they were talking and all of them just piled into the car and drove around to the store. On the way back, apparently a police officer recognized the driver as having an outstanding misdemeanor warrant. It's nighttime, about 9 o'clock in the evening. I've driven and looked in the cars in the evening. I swear I cannot recognize anybody, but apparently she recognized him and he recognized her. And pulled him over. She stopped at a seafood outlet store, a seafood store, that was on the way back home. And long story short, the officer beckoned her, she got out of the car, acknowledged that she did have this outstanding misdemeanor warrant that had something to do with community service. And she, he arrested her, put her in the car. And then a slew of police officers show up. The other passengers, three of them, are still sitting in the car. The defendants claim that they were trying to get out the car, but there are videos. The police officers turned on their video at the point of them taking the woman out of the car, but they didn't know that the establishment had a video on the top of their business that captured the entire scene from the time of the stop of the truck and the police officers arriving. So you see everything that happened. There's a brief instance where Ms. Avery opened the door and apparently was told to get back in the car. She did immediately, and you can see that. I have one question. The city's brief said that your clients were charged with criminal proceedings. Were they convicted? What happened? No, they were not. Okay. Were the charges just dropped? They were dropped. They were not charged with any criminal proceedings that I know of. They were not prosecuted for any criminal proceedings that I know of. Okay. But nevertheless, the officers who arrived later proceeded. There's a discrepancy between what my clients say happened and what the police say happened. My client says that police officers approached and asked them for identification. And my client said that they told the officers they didn't have their identification. One of them said, my mother, I can call my mother and she can bring my ID. The other one said she gave him the ID, and I think that if you look at the video carefully, you can see the passenger, which is Ms. Johnson, behind the passenger seat, actually, I think, giving somebody the identification. But somebody and somehow wanted to take Ms. Johnson's, Ms. Avery's phone. Apparently officers reached in and that's when things got topsy-turvy. But it's clear that the officers confronted the passengers remaining, not in any association with the arrest of the driver, not incident to the arrest of the driver, but solely for the purpose of identification. And your position, as I understand it, is that the officers were not entitled to ask for identification under those circumstances. They had no probable cause of any wrongdoing by the passengers. They admit that. They have what they have admitted is a policy of the Thibodeau Police Department, and if you read their expert testimony, it's apparently a policy that extends in a four parish area, running from Assumption back to Terrebonne Parish, that's called Stop and Identify. And they have described it as a policy where police officers have a right, if they stop an automobile for good reason, bad reason, no reason at all, that they have a right to demand identification of the passengers in that car. And not only identification, but photo ID. And if you don't, officers testified that if you don't have a photo ID, they can arrest you and take you to jail. So the oral argument of Counselor Trout was that all they had to do was to go along to get along. All they had to do was waive their constitutional rights and waive everything that Terry B. Ohio said, and they wouldn't have had a problem. But, and I don't think anybody was thinking about Terry B. Ohio, especially police officers who should have been thinking about it. The persons, even if they had refused, they said they didn't refuse, but even if they had refused to give the officers their identification, they have a constitutional right to refuse. They had committed no crime, the officers did not say that they had violated any probable cause, they didn't have any probable cause or reasonable suspicion. They were just passengers in a car who had just gone to a store. They had done nothing. Counsel doesn't depend on whether they are lawfully detained. Well, they were not lawfully detained. Well, they were lawfully detained when they stopped the driver. And after they arrested the driver, that detention should have stopped. It should have been over. They complied with the officers. They did not resist the officers. The officers did not say that they resisted them. Just plain old Terry law. Plain Terry law. Well known. Brown v. Texas. Well established law. But they have implemented a policy which they acknowledge, police officers acknowledge it, that this is the policy of the Thibodeau Police Department. They got an expert witness to say, yeah, this is what we do, and it is lawful. That expert witness was not a lawyer, but he testified before a jury. And the other issues in the case are also important. With municipal liability, the question is, we only had that particular incident, but you have all the officers and one of their supervisors testifying that this is the policy of the Thibodeau Police Department. They testified that it's the policy. Nobody has ever denied that it was the policy. So if it's a policy that's testified to by all the officers in their transcript, it's the policy. And there should be municipal liability in this case. Beyond that, we've got issues about. What would you want us to do about municipal? Would you expect for us to hold or remand it to decide the policy? I would hope that there's enough evidence in this record that the policy is clearly established on the facts and the testimony of the witnesses, the defendants themselves, including their supervisor. There's no dispute about the facts anywhere. So I would hope that this court would declare that the evidence establishes clearly that there is a policy. Then we have the problem of the expert testimony. Mr. Sinek, who is an orthopedic surgeon who examines two years later and more or less declares that they had suffered no injury at all. I don't see how you can look at the recording of what happened out there. Either the recording of the seafood outlet establishment or the recording of the police officers and declare there was no injury. Certainly there was injury. They testified to that injury. If you look at the transcript of their supervisor deposition, 30B-6 in the record, he says there were injuries to these persons, that they were treated for scars and scrapes. Mr. Taylor, let me go back to one of the other issues. You present a strong case on the request for identification, but on the issue of city policy as it regards requesting identification unlawfully. You did not plead that. As to the city, you pled only a city policy regarding excessive force. So it seems to me that you may not be able to assert your claim on the city policy of requesting identification. Your Honor, cases develop, discovery is taken. It certainly is in, I think, our pretrial order. We didn't plead it in the beginning. You may be correct. So you're saying if it was in the pretrial, I'm not putting words in your mouth, but you're saying if it was in the pretrial order, it was tried by consent? Yes, sir. If it arises out of the facts of this case, facts are presented. And what arises out of the facts ought to be before the court. And whether or not we are able to articulate at beginning when we filed the pleadings, all of the issues of law that are in the case, I think the rules say that we're entitled, a plaintiff is entitled, a party is entitled to the relief to which they're entitled. Whether or not they ask for it. Well, usually you're required to plead it with enough specificity that the defending party knows what it's being charged with. And I don't believe it's in your complaint. Of course, we'll study that carefully, but I don't believe you have plead that. Sir. Your Honor, it arises out of the facts. And I would hope that the court would allow us to it's an important issue that arises out of the facts. And one of the other things that we hoped and that I said, and the reason for asking for this oral argument is to point out to the court there are so many things that arise out of this case. One of the things I would ask the court to simply look at is the process of trial. Rule one promises quick and speedy. We drug this trial out. These are poor people. I represent them. This trial went all the way to a jury in New Orleans with folk from Thibodeau. I don't think that the issue of liability with respect to Terry B. Ohio should have ever gotten to a jury. I think the trial court should have decided that. I don't think the evidence regarding the expert witness and his credentials that Mr. Sinek should have ever been tried before a jury. I don't think that we should have been stopped in challenging Mr. Sinek's credibility before that jury. And with respect to a matter that in his association with somebody that this court had addressed, I think that we on the issue of municipal liability, it's an important issue. This is one of the first cases that I've seen where you have the principal defendants of 30B6 deposition and they're all admitting that this is a policy of the city. And I would hope that the court would consider that. I took this case to try and stop it. Where this happened is in the heart of the black community. Just stopping people and demanding ID of them without any probable cause, without any reasonable suspicion of crime, there's something wrong with that. And if that expert is correct, he's testifying that that's what they're trained to do in the academy. That's what police officers are doing from Assumption to Terrebonne Parish. And I hope that this case is important enough for this court to deal with that. It would make a tremendous difference in how police officers conduct their business in this area. You've saved time for rebuttal, Mr. Taylor. May it please the court. My name is Michael Gee and I have the pleasure of representing the city of Thibodeau and several of its officers, Berg, Buchanan, Godet, Shaver, Sutton, Amador, Thibodeau, and I think I've got them all. But this case, as you are aware, rises out of an incident that happened in October 2015. Your brief says that the two plaintiffs were charged with criminal conduct. Is that true? Yes, they were, Your Honor. Were they convicted? They were not. Dwan Every pled no contest. To what? To the resisting arrest.  Yes, Your Honor. And the charges against Ms. Johnson, I believe, were not prosecuted. What was the legal justification for prolonging the stop to ask for IDs from the non-drivers? Well, Your Honor, we dispute the facts. He said the facts are in agreement. They're not in agreement. And when the driver was brought over to the side, at that same time, Dwan Every kept trying to get out of the vehicle. She kept trying to get out of the vehicle and raised a safety concern. So from the point that Robertson was removed from the vehicle, Dwan Every started getting out of the car, cursing loud. Officer Amador had to shout several times, loudly, get back in the car, get back in the car, get back in the car. So from that point on, they were detained. When Ms. Robertson was questioned, she was not the registered owner of the vehicle. So the officer could not just turn over the vehicle to these people. He had to see if any of them had a license so they could drive the vehicle. So they were met with resistance pretty much right out of the gate. So it became a safety issue. If the officer didn't testify, you didn't put that in your brief. The only testimony I've seen, every officer said, we do this as a matter of policy. We didn't think they were about to commit a crime. We didn't have probable cause to think they were going to commit a crime. We do this as a policy. Now, is there evidence in the record that any officer said this was a safety concern, we were doing a protective sweep? Your Honor, if you would look at the testimony of Officer Armbruster, I mean not Officer Armbruster, but Expert Armbruster, he said it was safety. Not the expert. The expert wasn't there. What your officer said, did any of your officers say we did it out of safety concerns? I didn't see that in your brief or his. Yes, and I apologize for not putting it in the brief. Your brief is very brief with respect. Yes. You didn't discuss Brown v. Taylor or Texas at all. Okay, well, I felt that Brown v. Texas didn't apply and this is not a stop and frisk Terry case. Why didn't you say that in your brief? I don't know, Your Honor. I felt this was a stop and identify that probable cause and reasonable suspicion is not required. If you look at Pennsylvania v. Mims, and then you also look at the Maryland case, Pennsylvania v. Mims, you don't need probable cause to ask a driver of a vehicle to get out of this United States Supreme Court case and to give them the identification. And then there's a case These weren't drivers. These were passengers. Right. There's a case, Your Honor, that has extended it to the passengers. It's Maryland v. Wilson, the United States Supreme Court case. It extends to Pennsylvania v. Mims to the passengers because the same safety concerns apply to the passengers as applies to the driver. And if you look at the facts of this night, it was almost 11 o'clock at night. Multiple occupants in the vehicle. They're trying to get out. Officer Amador and the police report is in evidence. Exhibit 25 is admitted. And you've got testimony of Stephen Amador there, Paul Thibodeau, and Adrian Buchanan. But especially if you look at Stephen Amador, it's late at night. Multiple occupants in there. DeJuan Every is trying to get out of the vehicle. The suspects or the passengers are using cell phones. They're telling them to pick up the cell phones. And if you watch the video, there are people coming out there. So it's a safety concern. It is a very vibrant scene that's happening out there on that night. And Officer Amador does recognize Kizzy. That's her nickname. She has narcotics arrests, previous narcotics arrests. And that's all in Officer Amador's report, which is in evidence at Exhibit 25. Amador had knowledge of Every's prior arrests for possession of illegal narcotics. He did notice in plain view on the floorboard minute amounts of suspected marijuana. None of this is in the testimony that's been cited to us. Okay. I apologize. My apologies. It is in the record. Was it offered at trial? I mean, was there testimony about this? Yes. There is testimony from the officers of all the safety issues that they were going through. So what do you do with the statements that Judge Owen referred to, statements to the effect that we have this policy of asking for ID? Your Honor, I know the officers testified that it was a policy, and you do not have to provide a photo ID. Kelly Green got out. She didn't have a photo ID. She gave her name and her date of birth, and they were able to pull that up on the computer. Let's get back to the policy. If an officer testifies that we have a policy of asking for IDs for people in a vehicle, that would not be in accordance with what's permissible under the Constitution, would it? I believe it is, Your Honor, and it's not just a policy. It's the law. If you look at State v. Landry, okay, and Pennsylvania v. MIMS, you don't need probable cause that a crime has been committed to ask someone to identify themselves when there's a valid traffic stop or vehicle stop. To ask the non-drivers for ID automatically as a matter of policy where there's no other suspicion of criminal activity? Correct, Your Honor, and where there's it's a balancing test. It is a minimal intrusion for someone to have to identify themselves as opposed to officer safety and for someone just to have to give their name and identify themselves. State v. Landry, it's a 1991 Supreme Court decision of the State of Louisiana. Very clear analysis on there. It had talked about Pennsylvania v. MIMS. It had talked about also the previous law in Louisiana, but it extended the request for identification from just the driver to the passengers as well. And it's not just a policy, these typical police officers. It is a state law. It's taught at the post academy, the Peace Officer Standards Training Academy, and it is part of the law. State v. Landry, and then you also look at 14, Revised Statute 14, colon 108, and it provides that you can be charged with resisting an officer for failure to give identification. Well, it would have been helpful if some of these cases were in your brief. Well, again, Your Honor. And some of the facts. Yes, and well, throughout the trial, they were raising a stop and frisk and we were saying this was not a stop and frisk case. It's all throughout the transcript of the trial, and Judge Zaney had finally cautioned them not to They kept citing Code of Criminals Procedure 215.1 and muddying the waters for the jury. And Zaney was not going to allow that to happen anymore. It was a 14, 108 case, which was identification. And you don't need probable cause. You don't need reasonable suspicion to have them identified when there's a valid vehicle stop as we had here. Well, what do you do with the Brigham case? That's an in-bank case from this court, 2004, in which we held that the detention can't be extended beyond the time needed to arrest the driver unless there's other reasonable suspicion of criminal activity. And that didn't happen here. Well, Officer Amador, in his report, she's continuing to get out of the vehicle very strongly. He's got to get her back in, get her back in, and he recognizes her. They know her as Kizzy, okay? But he recognizes her. She's trying to get out of there, and he knows she's got multiple narcotics arrests. He's got the canine dog. He couldn't even put her in the vehicle. He had to wait for other officers to get on the scene before he can't put her in there with the dog. But then when he brings the dog over there, the dog goes off as positive on there, and that is in the report. The dog goes off on the vehicle? Yes. And the dog is a canine nitro, certified narcotic dog. But I would say, with regard to Dr. Sinak and whether these there were any injuries, Dr. Sinak is a well-qualified orthopedic surgeon. A plaintiff even stipulated to his expertise on, if you look in the record, page 391, a plaintiff stipulated that Dr. Sinak was an expert in the field of orthopedic surgery. And they had multiple opportunities to try to limit his testimony with motions and lemonade, and the court ruled against them, and then it was put together in a video for trial, and they wanted to rehash all the issues again, and Judge Zaney correctly said, no, it's here. So Sinak was not able to go into any kind of talk about their past opioid use or violation of pain contract or smoking or anything like that. He had to limit his testimony to the issues at hand. Their previous extensive medical history and all the other accidents and injuries they had, Dr. Sinak testified clearly that there were diagnostic films he saw before the incident and after the incident, and he looked at the medical reports after that showed no proof that there was any injury. Plaintiffs did not put on one item of medical evidence at trial. They did not even bring one piece of paper to put into evidence and say this shows that they're injured. They said they were injured. Officers testified at trial that there were no visible signs of injury on this. They did not see. There was some mention of scraped knees. When John Sutton, one of the officers, tried to isolate it, she wouldn't even cooperate to tell him that. So scraped knees, I don't know if that's excessive force either. They did not show this was an excessive force claim. They did not establish that there was any kind of injury either. But back to the policy, which seems to be a big concern, and my apologies for not briefing it more fully in the brief. At all. Yes. This is the law. This is the law. It's not just a policy created by a few little parishes in south Louisiana. This is State v. Landry Supreme Court case of Louisiana and 14-108 and it's taught at the academy. I don't understand what difference that makes if it violates the Federal Constitution. Well, we're saying it doesn't because it follows Pennsylvania v. Mims and it also follows that Maryland case. I just want to understand, you acknowledge as the attorney for the city that the city has a policy of just automatically asking for IDs of passengers in a vehicle even absent suspicion of any unlawful activity. Yes. It is a law that they're taught to follow in the academy and they do that. So the answer is yes. Yes. Wilson says that you can make passengers exit a vehicle even if you don't think that they're committing a crime. But it doesn't say you can demand ID. Okay. Well, State v. Landry does and as Louisiana Supreme Court case and it does say you can ask for ID. The officers had a further security interest. That's when you have a security interest. Okay. And if there is a limitation. Okay. Where is the testimony in this record that there was a security interest? Because all that's been quoted to us is we did it pursuant to the policy. That's the only reason. Okay. Your Honor, security interest is that it's late at night, multiple occupants in a vehicle. Did the officers verbalize that? Yes, they did. Okay. And what page of the record can we find that? Your... I don't have the page number. But you're assuring us it's there. I'm sorry? It's there. Yes, it is there. So one of the reasons we have oral argument is that attorneys can assist us in finding things in the record. So are you saying it's going to be in the live testimony from trial, it's going to be in the transcript, or are you saying we have to look back at some other documents, such as a police report? Judge Owen is asking, she's asked you about three times, where will we find it? Okay. You will find the safety concerns, the safety issues, definitely in expert Armbruster's report, but also in the police report, and you will find it in the police testimony that there were safety concerns with the cell phones that they were using, they were calling people, and Duane Every trying to get out of the vehicle. You will find that in the testimony that was taken at trial. And that's volume two. Well, Amador was volume one of the transcript. I can narrow it down a little bit. Volume two had Paul Thibodeau, he was involved in there, and Adrian Buchanan was a second day as well, volume two. Aside from any safety or side issues, if nothing else of that kind were determined, at what point would their detention become unlawful? Well, if they were free to leave, you know, they're not detained anymore, but I guess you would look at a time would pass, and if they had courted the other driver away, and it was no longer any kind of concern, and if there's no safety issue, no reason to detain them, they had a reason to detain that night in these specific facts. Well, they weren't free to leave until they identified themselves. Correct. Now, at what point did that become the situation? That, well, when safety was an issue... Aside from any safety. Let's say safety is a fact issue in this case. Just lay it aside. Okay. What's the law? Okay. That, well, when safety is... Aside from any safety issue, what is the law on when the detention becomes unlawful? When there's no longer a basis to hold them. What? When there's no longer a basis to detain them, to hold them. So you can detain them, but can you ask them who they are? You can under 14-108 and ask them who they are. Even if the lady was driving is gone. No, no, you cannot. I'm sorry, I'm having a difficult time. No, when the lady's gone, no, that's clear. There's no longer a basis to detain. They could not turn the vehicle over to them. The vehicle had to be towed. Nobody had a license that night. They weren't even a registered owner of the vehicle. But back to the safety concerns. After she's gone, if there's no other safety issue, but they have to be identified. Yes, but your honor, there were safety issues here, and I know you've asked me to set that aside. Don't ask some other question when I'm asking you this question. As soon as the arrest has been completed, that there's no further reason for detention, absent suspicion of criminal activity. Isn't that right? Yes. And that's what the Brigham case said that I referred to, the in-bank case. Okay, and your honor, they did recognize, DeJuan Avery, if you look at Exhibit 25, Officer Amador, did recognize her as having prior arrest, narcotics convictions. Well, what difference does that make? You can't just stop somebody on the street because you know that person has prior convictions. I'm not talking about someone who's under a warrant. Well, it was a safety issue, and that's why they were IDing them. I'm a little bit worried about that, because it sounds like what you're saying is that if a person has had prior arrests or convictions for serious, that it's then okay to ask that person for ID where it might not have been okay otherwise. No, your honor. That's what I thought I heard you say, so you better clarify that. I don't mean to paint that picture. It may be part of the whole picture that they were dealing with. Officers only have so many minutes to make decisions. If you look at those videos, you can see what the officers were dealing with, with the anger and the They had safety issues right out of the gate. They recognized the driver, Robertson, as having an outstanding warrant for the arrest, pulled him over, she gets out, and then Ms. Avery continues to try to get out of the vehicle and has to be warned several times to get back in. At that point, safety is a concern. And at that point, officers are entitled, under State v. Landry, to go ahead and ask for identification and ask them to get out of the vehicle so that they can make sure there's no weapons there or anything of that sort. And it's a very minimal intrusion, I would put forth, to have to identify themselves as opposed to officer safety. Page 12, for example, the appellant's brief, he says the defendants repeatedly affirmed your clients over and over again that their sole reason for detaining clients was to force them to produce identification without any reference whatsoever to plaintiff's involvement in criminal activity. I don't agree with that. That's not the sole reason. And he says they admitted they had no probable cause to detain them. They did admit that there was no probable cause. And again, Your Honor, throughout this case, they were raising Terry v. Ohio, stop and frisk, where you need probable cause to stop somebody and pat them down, but on the stop and identify, you do not need it when safety is a concern. And in here, safety was a concern. So they just asked for identification, which we feel is a very minimal intrusion in this instance. All right. Thank you, Mr. G. Let me ask you this. Yes. If the facts in this case were as Mr. Coates has told us, as he sees them, would you share his concern? If the facts were as he has represented, I would share his concern. Thank you. But I do not agree with his facts. Thank you. All right. Thank you, Mr. G. Mr. Taylor, you've saved time for rebuttal. Your Honor, one of the things I pointed out in my reply brief is that the pre-trial order sets for what the facts are. They laid out the facts in the pre-trial order. And that on the essential facts, the reasons for the stop, the sequence of events, there's very little difference between what we say and what they say. Now, insofar as a concern about safety, there's a video. Was there evidence at trial that one of the officers saw marijuana on the floor? No. Okay. There's no such evidence. And that particular police report got sneaked in. It shouldn't have been in. It got in because Judge Zaney wouldn't hear anything at the end of the trial. All of the police reports, their police reports, none of them were made in trial. He got that one in because it had that stuff in it. And if you look at the video, you will see that at some point the police dogs came. It has nothing to do with this case. There's no safety issue. If you look at the video from beginning to the end, there's one brief point where Ms. Every opened the door and was going to get out, and apparently the officer did tell her get back in, and she closed the door and got back in. Did she plead no low contender to resisting arrest? Your Honor, I really don't know. I have to honestly tell you, I don't know. He could be correct. I really do not know. And I don't remember whether she did or not. She may have pleaded no contest, as he said. If she did, does that change the case as to her? I don't think so. Why not? Because I have to think about it, Your Honor. I really had not thought about it. I really had not thought about it. I know there is case law about guilty pleas and the right to break suit, but I'm not prepared to argue it at this point right now if it is an issue for her. Anything else, Mr. Taylor? There is no safety issue in this case. If you look at the video, it shows exactly what happened. They testified at trial about what happened. They were not in any danger. The driver had been arrested. And then the police officer came. The arresting officer who arrested the driver, put him in a police car, he then comes back. All of this is in the video. What counsel is arguing is a complete emasculation of Terry v. Ohio. Terry v. Ohio is overruled by what he's saying. That's not what the law is. And I urge this court the evidence is there. The testimony is there. Stop and identify is an unconstitutional policy. Stop and identify gives them carte blanche authority to stop vehicles without probable cause, without even a reasonable suspicion, and to accost passengers in a car. Stop and identify is unconstitutional. Mr. G. suggested it's okay to do it if this is a person who in the past has been charged with or convicted of some substantial crime. Your Honor, if that is the case, then you have police officers running around stopping people because they think that the thought of it... What about the Supreme Court's decision in State v. Landry? The Louisiana Supreme Court's decision? If Landry says what he says it says, then it violates the Constitution of the United States. Has it been overruled? It's out there. Well, he didn't put it in his brief, so I'm not prepared to comment on it. But I know what Terry v. Ohio says. I know what Brown v. Texas says. And I know what a host of progeny arising out of these cases say. And stop and identify has been described in their brief, as described in the court. And he's correct. I was admonished for raising Terry v. Ohio in this case. And I urge the court... I can't say much more than what I've said in my brief and in my reply brief. They did not respond or try to argue that Terry v. Ohio did not apply in this case. There was no danger to these police officers. These people didn't do anything to these police officers. They found themselves being jerked out of a car, thrown to the ground, tasered, and arrested. There's something unfair about that. All right. Your time now has expired, Mr. Taylor. Thank you. And your case is under submission.